**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **STEVEN RAY NELSON,** | | |
| **ID # 1130776** | ) | |
| **Petitioner,** | ) | |
| **vs.** | ) | **No. 3:06-CV-1562-M (BH)** |
| | ) | |
| **RICK THALER,[1] Director,** | ) | **Referred to U.S. Magistrate Judge** |
| **Texas Department of Criminal** | ) | |
| **Justice, Correctional Institutions Division,** | ) | |
| **Respondent.** | | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the provisions of 28 U.S.C. § 636(b) and *Special Order* 3-251, this case has been referred for findings, conclusions, and recommendation.

## I. BACKGROUND

Petitioner, an inmate currently incarcerated in the Texas Department of Criminal Justice - Correctional Institutions Division (TDCJ-CID), filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The respondent is Rick Thaler, Director of TDCJ-CID.

### A. Factual History

In the early morning hours of April 14, 2002, Texas state trooper Kevin Cauley and Rockwall County Sheriff's Deputies Sergio Reyes, Eddie Edwards, Bobby Burks, and Hank Havens were searching for a man who had run from Cauley after a traffic stop. (R. 4:10,19-23, 145-46). Around 3:00 a.m., after they had ended the manhunt, petitioner and his wife drove up slowly to a gated community in Rockwall County where the officers were standing. Thinking it unusual that

---

[1] On July 15, 2009, Rick Thaler succeeded Nathaniel Quarterman as Director of the Correctional Institutions Division of the Texas Department of Criminal Justice. Under Rule 25(d) of the Federal Rules of Civil Procedure, Thaler "is automatically substituted as a party."

anyone would be approaching that location at that time of the night, and noticing that petitioner and his wife both looked down quickly after seeing the officers, Cauley approached the car from the passenger side. (R. 4:24-7). Petitioner told Cauley that they were looking for a motel and then reached down and picked up what appeared to be a bag containing either crack cocaine or methamphetamine and put it in his mouth. (R. 4:28-9). Cauley alerted the deputies to this and told petitioner to stop and get out of the car. Instead, petitioner put another bag with a white powder substance inside of it into his mouth and tried to swallow it. (R. 4:30-33).

Cauley opened the passenger door, reached past petitioner's wife, and grabbed petitioner's throat and hands to try to prevent him from swallowing anything else. Petitioner kept yelling obscenities and proclaiming that he couldn't go back. (R. 4:38-9, 226). At this same time, Deputy Reyes opened the front driver's door of the car and also tried to get petitioner to stop swallowing the drugs by grabbing him. (R. 4:152-54). Both Reyes and Cauley had noticed that the reverse lights and brake lights on petitioner's car were initially on, but they went off at one point. (R. 4:100, 151-52). During the struggle, Cauley saw a white hand that he believed to be the wife's hand reach up and put the car in gear. (R. 4:44, 104). Cauley is African-American and Reyes is Hispanic. Along with the other deputies who had approached the car to assist, Cauley and Reyes realized that the car was moving backwards at a fast pace. (R. 4:156, 212, 226, 260). Reyes saw petitioner slam his foot on the accelerator. (R. 4:156-57).

Cauley and Reyes were both hit by the car. Petitioner's car ran over Cauley's legs and hip, and these injuries required hospitalization and physical therapy before Cauley returned to work. (R. 4:67-8). The driver door of petitioner's car hit Reyes, injuring his head, back, and legs, and his body was dragged by the car. He spent several days in the ICU as a result of his injuries. (R. 4:157-59).

A nurse who treated petitioner for injuries he had from his arrest after this incident testified at trial that he made random statements while in the hospital, including a statement that "she" made him do it, and "she" put the car in reverse and told him to floor it, and that he was sorry. (R. 5:64-5). Petitioner's urine was tested at the hospital after his arrest, and it tested positive for cocaine and amphetamines. (R. 5:90).

Petitioner testified that he had been doing drugs before he and his wife approached the location of the officers after having missed the exit on the highway where a motel was located. He also admitted to swallowing one bag of drugs that was still in his car. He testified, however, that the car was always in reverse and was never put into park. Petitioner further testified that he lost consciousness after Officer Cauley grabbed his throat, that he did not regain consciousness until the car was already traveling in reverse when his head hit the ground, and that he did not change the gears of the car and did not intentionally accelerate the car because he was unconscious at that point. (R. 5:95-108). The wife testified that Cauley choked her husband, the car was in reverse when Cauley entered the car, petitioner never placed it in park, she never touched the gear shift in the car, and she never told petitioner to put the car in gear and floor it. (R. 5:181-195).

On November 18, 2002, the Rockwall County jury convicted petitioner of two counts of aggravated assault on a public servant and tampering with physical evidence in Cause Nos. 2-02-206, 2-02-207, 2-02-208. (Petition (Pet.) at 2; R. 6:63-4). He was sentenced to eighteen years in the two assault cases and ten years in the tampering case, with the sentences to be served concurrently. (R. 6:136-38). His wife was acquitted of the two charges against her. (R. 6:63-4).

## B.  Procedural History

Petitioner appealed all three cases, and the Fifth District Court of Appeals affirmed in an

unpublished opinion. *Nelson v. State*, Nos. 05-02-01917-CR, 05-02-01918-CR, 05-02-01919-CR (Tex. App. – Dallas, Jan. 6, 2004, pet. ref'd). His petitions for discretionary review were refused by the Texas Court of Criminal Appeals on September 15, 2004. *See* PDR Nos. 241-04, 242-04, 243-04. Petitioner did not file any petition for writ of certiorari with the Supreme Court. On October 25, 2004, he filed state habeas petitions in all three cases, but they were dismissed by the Court of Criminal Appeals on January 12, 2005, because his direct appeal was pending. (State Habeas Transcript[WR-60,848-01, WR-60,848-02, WR-60,848-03]:covers).

On May 4, 2005, petitioner filed state writs in one of the aggravated assault cases and the tampering with evidence case, Cause Nos. 2-02-207, 2-02-208. (S.H.Tr.[WR-60,848-04, WR,60,848-05]:7). These writs were denied on their merits by the Court of Criminal Appeals without written order after that Court remanded the cases for an evidentiary hearing. (Supp.S.H.Tr.[WR-60,848-04, WR-60,848-05]:covers). Petitioner filed a state habeas petition with respect to Cause No. 2-02-206 on March 29, 2006. (S.H.Tr.[WR-60,848-06]:7). On July 19, 2006, this state writ was also denied on its merits without written order by the Court of Criminal Appeals. (*Id*. at cover). It is his conviction for aggravated assault of a public servant in Cause No. 2-02-206 that petitioner challenges in this federal petition.[2]

Petitioner mailed his federal petition on August 9, 2006. (Pet. at 9). On July 31, 2007, it was recommended that this federal petition be denied as barred by the statute of limitations. (*See* doc. #8). The recommendation was adopted, and on October 17, 2007, the Court denied the petition as time-barred. (*See* docs. ##10, 11). Petitioner appealed this judgment, and on December 30, 2009, the Fifth Circuit vacated the judgment and remanded this case with instructions to consider whether

---

[2] A prior federal petition challenging petitioner's other two state convictions was denied on its merits on June 25, 2008. *See Nelson v. Quarterman*, 3:06-cv-642-M (N.D. Tex. June 25, 2008).

petitioner is entitled to equitable tolling of the statute of limitations based on evidence presented at the Fifth Circuit. (*See* doc. #17.) In particular, this Court was directed to determine the contents of three pieces of mail received by petitioner two days after the dismissal of his three state applications, and if necessary, to consider whether petitioner acted diligently in seeking information about the resolution of his state application under the Fifth Circuit's recent holding in *Hardy v. Quarterman*, 577 F.3d 596, 598-99 (5th Cir. 2009). *See id.*

By order dated January 26, 2010, the Court scheduled an evidentiary hearing. (*See* doc. #21.) The parties subsequently moved to cancel the evidentiary hearing and to proceed by affidavits. (*See* doc. #24.) Petitioner was ordered to file an affidavit and brief addressing his entitlement to equitable tolling. (doc. #26). Petitioner filed a brief and affidavit on April 19, 2010, and respondent filed a response addressing the issue of equitable tolling on April 29, 2010. (docs. ##29, 30). On May 18, 2010, the Court ordered respondent to file a response to petitioner's original petition, and respondent responded on June 8, 2010, and furnished the state court records. (docs. ## 31, 33). No reply brief was filed.

## C. Parties' New Evidence

Petitioner's affidavit claims that he received two notices stating that his state applications for post-conviction relief had been dismissed in two of his cases and a letter stating that one of his applications was still pending from the Court of Criminal Appeals on January 14, 2005. On January 18, 2005, he sent a letter to the Court of Criminal Appeals asking about the status of his pending state habeas application. He received a letter from the clerk of the court stating that the case was still pending and that he would be notified when a decision was reached on January 28, 2005. Petitioner sent a second letter in April of 2005 that was never answered. He sent a third letter asking

about the case on or about January 17, 2006, and received a response that his application had been dismissed on January 12, 2005. (Petitioner's Brief Seeking Equitable Tolling, Ex. A). He then filed a state habeas petition on March 29, 2006. (S.H.Tr.[WR-60,848-06]:7).

Respondent provided a copy of the relevant incoming mail log. It shows that petitioner received three documents from the Court of Criminal Appeals on January 14, 2005. (Response to Petitioner's Brief, Ex. A, part I). Petitioner received legal, special, or media mail from an unspecified sender on January 27, 2005. (*Id.*, Ex. B). He mailed a document to the Court of Criminal Appeals on April 19, 2005.[3] Petitioner sent another document to the Court of Criminal Appeals on January 17, 2006. (*Id*, Ex. A, part II).

The state court records reflect that on January 20, 2006, the Court of Criminal Appeals received a letter from petitioner expressing his understanding that two of his writs were dismissed in January of 2005, but that one had been accepted and remained pending. That letter referred to a previous letter petitioner had received from the court on January 28, 2005, informing him that the writ was pending. Petitioner's January 2006 letter also stated that he had re-filed the other two writs because they had been dismissed and inquired whether the state writ in Cause No. 2-02-206 was still pending. On January 20, 2006, the Court of Criminal Appeals responded to this letter by informing him that his state writ in Cause No, 2-02-2-6 had been dismissed on January 12, 2005. (S.H.Tr.[WR-60,848-01], event date 1/20/2006:1-2).

**D.  Substantive Issues**

In his petition, petitioner raises the following grounds for relief:

---

[3] The outgoing mail log also indicates that petitioner mailed a document to the district clerk's office in Rockwall, Texas, on May 2, 2005. The state writs in his other two cases were filed in the trial court on May 4, 2005. (Response to Petitioner's Brief Regarding Equitable Tolling, Ex. A, part II).

1)  the police did not have probable cause to approach his vehicle and the trial court did not make a probable cause determination (ground one);

2)  a urine sample was illegally seized from petitioner at the hospital he was transported to after his arrest (ground two);

3)  The trial court and prosecution knowingly used perjured testimony at trial (ground three);

4)  Petitioner is actually innocent of the charges against him(grounds five through seven);

5)  Petitioner was denied his due process rights when the police officer used excessive force against him (ground nine);

6)  The trial court erred in permitting the prosecutor to falsely diagnose petitioner as a sociopath in his closing statement at the punishment phase of the trial (ground eleven);

7)  The State withheld mitigating evidence by not introducing videotapes from the police cars into evidence at trial (ground thirteen);

8)  The trial court erred in allowing the jury to hear unauthenticated audiotapes (ground fifteen); and

9)  Trial Counsel was ineffective for: failing to correct perjured testimony; failing to clarify his actual innocence; failing to file a motion to dismiss on the grounds of excessive force; failing to object to the prosecutor's closing argument; failing to request mitigating evidence from the State; failing to clearly object to the unauthenticated audiotapes; and failing to request a jury charge on an "involuntary" act and to present testimony on the theory of an "involuntary act" (grounds four, eight, ten, twelve, fourteen, sixteen, seventeen and eighteen).

(Pet. at 7-8, Memorandum (Mem.) at 5-10).  Respondent does not contend that petitioner failed to exhaust any of his claims at the state level.

## II.  STATUTE OF LIMITATIONS

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1217, on April 24, 1996.  Title I of the Act applies to all federal petitions for habeas corpus filed on or after its effective date.  *Lindh v. Murphy*, 521 U.S. 320, 326 (1997).

Because petitioner filed his petition after its effective date, the Act applies to it.

Title I of the Act substantially changed the way federal courts handle habeas corpus actions. One of the major changes is a one-year statute of limitations. *See* 28 U.S.C. § 2244(d)(1). The one-year period is calculated from the latest of either (A) the date on which the judgment of conviction became final; (B) the date on which an impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action; (C) the date on which the Supreme Court initially recognizes a new constitutional right and makes the right retroactively applicable to cases on collateral review; or (D) the date on which the facts supporting the claim became known or could have become known through the exercise of due diligence. *See id.* § 2244(d)(1)(A)-(D).

Petitioner has alleged no state-created impediment under subparagraph (B) that prevented him from filing his federal petition or any new constitutional right under subparagraph (C). The one-year statute of limitations is therefore calculated from the latest of (A) the date petitioner's conviction became final or (D) the date on which he knew or should have known with the exercise of due diligence the facts supporting his claims. Petitioner did not file any petition for writ of certiorari with the United States Supreme Court after his PDR was refused by the Court of Criminal Appeals. In such a case, the state conviction becomes final for purposes of § 2244(d) by the expiration of the ninety-day time frame for seeking further review after the Texas Court of Criminal Appeals refused the petition for discretionary review. *See Roberts v. Cockrell*, 319 F.3d 690, 692 (5th Cir. 2003) (holding that, when the petitioner has halted the review process, "the conviction becomes final when the time for seeking further direct review in the state court expires" and noting that the Supreme Court allows ninety days for filing a petition for certiorari following the entry of

judgment); SUP. CT. R. 13. Petitioner's state conviction therefore became final for purposes of §

2244(d) on December 14, 2004, ninety days after the PDR was refused on September 15, 2004.

With regard to subparagraph (D), the facts supporting petitioner's claims became known or could

have become known prior to the date petitioner's state judgment of conviction became final.

Because petitioner filed his federal petition more than one year after his conviction became final on

December 14, 2004, a literal application of § 2244(d)(1) renders his August 9, 2006, filing untimely.

## A. **Statutory Tolling**

Section 2244 mandates that "[t]he time during which a properly filed application for State

post-conviction or other collateral review with respect to the pertinent judgment or claim is pending

*shall not be counted toward any period of limitation under this subsection.*" 28 U.S.C. § 2244(d)(2)

(emphasis added). Because petitioner's first state writ was dismissed because the direct appeal was

still pending, it did not toll the one-year limitations period because it was not a properly filed

application. *Larry v. Dretke*, 361 F.3d 890, 894-95 (2004). Moreover, by the time petitioner filed

his state writ with respect to this conviction on March 29, 2006, over a year had passed since his

conviction became final. Accordingly, the one-year statutory time limit had expired before

petitioner's second state writ was filed, and statutory tolling therefore does not save petitioner's

federal petition.

## B. **Equitable Tolling**

Nevertheless, the AEDPA's one-year statutory deadline is not a jurisdictional bar and can,

in appropriate exceptional circumstances, be equitably tolled. *Holland v. Florida*, __ S.Ct. __, 2010

WL 2346549 (U.S. June 14, 2010); *Davis v. Johnson*, 158 F.3d 806, 810-11 (5th Cir. 1998); *cf.*

*Felder v. Johnson*, 204 F.3d 168, 170-71 (5th Cir. 2000) (only "rare and exceptional circumstances"

warrant equitable tolling).  "The doctrine of equitable tolling preserves a [party's] claims when strict application of the statute of limitations would be inequitable."  *Davis*, 158 F.3d at 810 (quoting *Lambert v. United States*, 44 F.3d 296, 298 (5th Cir. 1995)).  It "applies principally where [one party] is actively misled by the [other party] about the cause of action or is prevented in some extraordinary way from asserting his rights."  *See Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999) (quoting *Rashidi v. American President Lines*, 96 F.3d 124, 128 (5th Cir. 1996)).  A habeas petitioner is entitled to equitable tolling only if he shows that: 1) he has been pursuing his rights diligently, and 2) some extraordinary circumstance prevented a timely filing.  *Holland*, slip op. at 12, *citing Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).  He bears the burden to show entitlement to equitable tolling.  *Phillips v. Donnelly*, 223 F.3d 797, 797 (5th Cir. 2000) (per curiam).

The Fifth Circuit recently clarified that because the Court of Criminal Appeals is legally obligated to notify a petitioner once a decision has been made on his state writ, long delays in a petitioner's receipt of notice of state court action may warrant equitable tolling.  *See Hardy v. Quarterman*, 577 F.3d 596, 598 (5th Cir.2009).  A petitioner must show, however, that he pursued relief with "diligence and alacrity both before and after receiving notification."  *Id.*  In that case, the Fifth Circuit found that a petitioner who waited eleven months after filing his state writ to inquire about its status was diligent in pursuing relief and entitled to equitable tolling, especially where he twice contacted the state court again when he did not receive a response to his first inquiry within two months and filed his federal petition within seven days of the notice that his writ had been denied.  *Id*. at 599.

In contrast, the Fifth Circuit found that a petitioner who waited ten months after filing a state writ before inquiring about its status, waited another eighteen months before making a second

inquiry, and filed his federal petition within forty-eight days of receiving notice that the writ had

been dismissed, was not entitled to equitable tolling. *Stroman v. Thaler*, 603 F.3d 299, 302 (5th Cir.

2010). The Fifth Circuit noted that the petitioner in *Hardy* had filed his state writ within three

months of his conviction becoming final and had made his second inquiry within two months of his

failure to receive a response to his first inquiry whereas the petitioner in *Stroman* had waited seven

months after his conviction became final to file his state writ and waited eighteen months before

making a second inquiry about its status. *Id.*

In this case, petitioner filed state writs challenging all three conviction on October 25, 2004,

but the writs were dismissed by the Court of Criminal Appeals on January 12, 2005, because his

direct appeal was still pending. The relevant incoming mail log shows that petitioner received three

documents from the Court of Criminal Appeals on January 14, 2005. Petitioner claims he received

two notices that two of his state applications had been dismissed and a letter stating that one of his

applications was still pending. Respondent does not appear to dispute, and the record shows, that

petitioner inquired about this third application and received incorrect information from the Court

about the status of his writ on January 28, 2005.[4] The outgoing mail log supports petitioner's

assertion that he made another inquiry about the status of his writ in April of 2005. Nine months

later, in January of 2006, he sent another inquiry restating his understanding that one of his state

writs filed in October of 2004 was pending, and the Court responded on January 20, 2006 by

informing him that his state writ had been dismissed on January 12, 2005. Petitioner filed a state

---

[4] Petitioner re-filed state writs in his other two cases in May of 2005, less than four months after receiving notice that two of his October 2004 writs had been dismissed. There appears to be no reason that petitioner would not have filed a state writ in his third case unless he had been given incorrect information by the Court of Criminal Appeals about the status of that case. In fact, at the hearing concerning petitioner's other two state writs, held on November 5, 2005, petitioner attempted to speak to the judge about the fact that one of his state writs was not ordered remanded by the Court of Criminal Appeals for a hearing. (Supp.S.H.Tr.[WR-60,848-04]:6).

habeas petition on March 29, 2006, and it was denied on July 19, 2006. Petitioner filed his federal petition on August 9, 2006.[5]

Even accepting Respondent's argument that petitioner's claim that he made an inquiry in April 2005 is not credible because it was not raised previously, the facts in this case are still closer to those in *Hardy* than in *Stroman*. Even if petitioner waited twelve months after receiving incorrect information about the status of his writ to make another inquiry, he has shown that he pursued relief with "diligence and alacrity both before and after receiving notification" as required by *Hardy*. His October 2004 state writ was actually filed before his conviction became final in December 2004; he re-filed his state writ approximately two months after receiving notice in January 2006 that the earlier one had been dismissed; and his federal petition was filed less than one month after his re-filed writ was dismissed in July 2006. Petitioner is entitled to equitable tolling of the statute of limitations, and his federal petition will be considered timely-filed.

## III. RES JUDICATA

Respondent next contends that petitioner's claims are barred by *res judicata* based on the denial of his prior federal petition challenging his two other convictions on the same grounds and facts as in this case.

To establish the affirmative defense of *res judicata*, it must be shown that: 1) the prior judgment was rendered by a court of competent jurisdiction; 2) there must have been a final judgment on the merits; 3) the parties, or those in privity with them, must be identical in both suits; and 4) the same cause of action must be involved in both suits. *Mowbray v. Cameron County, Tex.*,

---

[5] *See Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999) (recognizing that prisoners file their federal pleadings when they place them in the prison mail system).

274 F.3d 269, 281 (5th Cir. 2001), *citing Stevenson v. Int'l Paper Co.*, 516 F.2d 103, 108-09 (5th Cir. 1975). The first three elements have been met. However, petitioner's prior federal petition challenging his other two state convictions is not the same cause of action as in this case, even though the same state trial resulted in all three convictions. The Court has never addressed the merits of petitioner's claims challenging the underlying state conviction for aggravated assault at issue here. Petitioner is separately contesting the constitutionality of a separate state conviction as permitted by 28 U.S.C. § 2254. The doctrine of *res judicata* therefore does not apply in this case.

## IV.  APPLICABLE STANDARD

Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term of art that refers to whether a court's disposition of the case was substantive, as opposed to procedural." *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000). In this case, the denial of petitioner's state writ constitutes an adjudication on the merits. *See Ex parte Thomas*, 953 S.W.2d 286, 288-89 (Tex. Crim. App. 1997) (holding that a denial, rather than a dismissal, signifies an adjudication on the merits). Thus, the AEDPA standards enumerated in 28 U.S.C. § 2254(d) apply.

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact. *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). A decision is contrary to clearly established fed-

eral law, within the meaning of § 2254(d)(1), "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

With respect to the "unreasonable application" standard, *Williams* instructs that a writ must issue "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001). Likewise under *Williams*, a state court unreasonably applies Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." 529 U.S. at 407. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; *accord Penry*, 532 U.S. at 793.

Section 2254(d)(2) concerns questions of fact. *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000). Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## V. SEARCH AND SEIZURE CLAIMS

In his first ground for relief, petitioner claims that the police did not have probable cause to

approach his vehicle and the trial court did not make a probable cause determination. In his second ground, he asserts that a urine sample was illegally seized from him at the hospital after his arrest. In his ninth and tenth grounds, he claims the officers used excessive force against him by choking and beating him. (Pet. Ex. A:7).

It is well-settled that a claim that evidence obtained pursuant to an unconstitutional search and seizure was admitted at trial cannot be a basis for federal habeas relief if the state provided an opportunity for a full and fair litigation of the Fourth Amendment claim. *Williams v. Taylor*, 529 U.S. 362, 375 (2000); *Stone v. Powell*, 428 U.S. 465, 482 (1976). A full and fair hearing contemplates that where there are factual disputes, the matter must be considered by the original fact-finding court, and there must be meaningful appellate review available even if unused. *See Davis v. Blackburn*, 803 F.2d 807, 808 (5th Cir. 1986). The Fifth Circuit has also stated that a Fourth Amendment claim has been fully and fairly litigated in state court where the material facts were adequately developed in state court and there is no undeveloped evidence sufficient to call into question the reliability of the state court's determination. *Andrews v. Collins*, 21 F.3d 612, 631 (5th Cir. 1994); *Streetman v. Lynaugh*, 812 F.2d 950, 958 (5th Cir. 1987). Moreover, an "opportunity for full and fair litigation" means just that: an opportunity. If a state provides the processes whereby a defendant can obtain full and fair litigation of a Fourth Amendment claim, *Stone* bars federal habeas corpus consideration of that claim whether or not the defendant employs those processes. *Caver v. Alabama*, 577 F.2d 1188, 1192 (5th Cir. 1978), *accord*, *Janecka v. Cockrell*, 301 F.3d 316, 320 (5th Cir. 2002).

Petitioner's trial attorney filed a pre-trial motion to dismiss all evidence obtained post-arrest because the police did not have probable cause to detain or arrest petitioner. (Trial Transcript (Tr.)

at 74).  The trial court deferred a ruling on the motion at the pre-trial hearing until trial, (R. 2:30), but the record does not reflect whether any decision was made.  Nevertheless, the state court provided an opportunity for the full and fair litigation of petitioner's Fourth Amendment claims, and petitioner's first and second grounds for relief and are therefore barred from being re-litigated at the federal habeas level.[6]

Petitioner's excessive force claims are more properly characterized as invoking Fourth Amendment rights to be secure against unreasonable searches and seizures.  *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993), *citing Graham v. Connor*, 490 U.S. 386, 384 (1989).  As such, these claims are also precluded under *Stone*.[7]

### VI.  PERJURED TESTIMONY

In his third ground for relief, petitioner asserts that the State presented perjured testimony and that the trial court permitted this testimony to be offered at trial.

The Supreme Court has held that the presentation of false evidence at trial, as well as the admission into evidence at trial of false evidence that although not solicited, is not corrected, violates a criminal defendant's due process rights, if the reliability of that witness may be determinative of guilt or innocence.  *Napue v. Illinois*, 360 U.S. 264, 269 (1959).  In order to prevail on a claim that his constitutional rights were violated by the presentation of false testimony, a petitioner must establish not only that the testimony was actually false, but also that it was material

---

[6]  To the extent that petitioner is also contending in his second ground for relief that his Fifth Amendment rights against self-incrimination were violated because he was forced to provide a urine sample at the hospital after his arrest, the Supreme Court has stated that the Fifth Amendment protects defendants from being forced to give testimonial evidence, but not from being compelled to produce "real or physical evidence." *Pennsylvania v. Muniz*, 496 U.S. 582, 591-96 (1990).  Any Fifth Amendment claim based on the urine sample would be without merit.

[7]  Petitioner may, and has, previously raised these claims in a civil rights action under 42 U.S.C. § 1983.  *See Nelson v. Cauley, et al.*, 3:04-cv-828-G (N.D. Tex).

and that the prosecution knew it was false. *Napue v. Illinois*, 360 U.S. at 271. The Supreme Court has also stated that a new trial is dictated only when the false testimony could, in any reasonable likelihood, have affected the judgment of the jury. *Id*.

Petitioner alleges that testimony given by State's witnesses was false because it differed from his and wife's testimony. (Pet. Ex. A:5-6). This bald assertion is not evidence of falsity, as conflicting testimony is to be resolved by the jury. *See Koch v. Puckett*, 907 F.2d 524, 531 (1990). Moreover, petitioner has failed to present any evidence that either the prosecution or the trial judge knew that any witness was giving false testimony. Petitioner has not met the requirements of a *Napue* claim. The Court of Criminal Appeals denied these claims on their merits, and this denial is not contrary to federal law.

## VII. ACTUAL INNOCENCE

In his fifth through seventh grounds, petitioner alleges that he is actually innocent of aggravated assault. (Pet. Ex. A:6-7).

In *Herrera v. Collins*, 506 U.S. 390, 400 (1993), the Supreme Court held that a claim of actual innocence based on newly-discovered evidence is not, and has never been held to be, a basis for federal habeas relief absent an independent constitutional violation occurring in the state proceeding. The Court assumed for the sake of argument that in a capital case, a "truly persuasive" showing of actual innocence would render the execution of an individual unconstitutional and thus warrant federal habeas relief if no state avenue existed to entertain the claim. The threshold showing for such an "assumed right" would be "extraordinarily high", however. *Id.* at 417. The Court concluded that conflicting affidavits submitted eight years after a trial, when considered in light of the strong evidence presented at trial supporting guilt, did not meet this threshold. *Id.* at 417-18.

Since *Herrera* was handed down by the Supreme Court, the Fifth Circuit has specifically rejected the argument that a showing of actual innocence would warrant habeas relief if there were no state avenue open to process such a claim. *Dowthitt v. Johnson*, 230 F.3d 733, 741 (5th Cir. 2000), *cert. denied*, 532 U.S. 915 (2001). Accordingly, under both Supreme Court and Fifth Circuit case law, petitioner is not entitled to federal habeas relief based on a claim of actual innocence.

Moreover, Texas does have an avenue in which to pursue actual innocence claims. In *State ex. rel. Holmes v. Third Court of Appeals*, 885 S.W.2d 389, 398-99 (Tex. Crim. App. 1994), the Texas Court of Criminal Appeals held that actual innocence could be a basis for state habeas relief where a petitioner established as a threshold that newly discovered evidence, if true, created a doubt as to the efficacy of the verdict sufficient to undermine confidence in the verdict. Subsequently, in *Ex parte Elizondo*, 947 S.W.2d 202, 208-09 (Tex. Crim. App. 1996), the court held that in order for a petitioner to prevail on an actual innocence claim, he must show by clear and convincing evidence that no reasonable juror would have convicted him in light of the new evidence. Indeed, the state habeas court considered and denied petitioner's actual innocence claims on their merits.

Even if federal habeas relief were available on the basis of a stand-alone actual innocence claim, petitioner would not be entitled to relief. Petitioner calls into question the testimony of State's witnesses and alleges summarily that the elements of the offense were not met. He has provided no actual evidence of actual innocence and is not entitled to relief on the basis of these claims. The state court's denial of these claims is therefore not contrary to federal law.

## VIII. CLOSING STATEMENT

In his eleventh ground, petitioner contends that the trial court erred in permitting the prosecutor to falsely refer to him as a sociopath during closing statements at the punishment phase.

During closing statements, and in rebuttal to the defense attorney's closing statement, a prosecutor made the following statement:

> How many opportunities do we give someone? Four that we know of. Let's talk about them. First of all, he picks up a marijuana charge, gets his driver's license suspended. That's a result of having marijuana. The purpose of that is deterring him from doing it again.
>
> What does he do? He continues to drive. It's no deterrent. You see, he's a sociopath. He absolutely cannot conform his conduct to the rules of society.

(R. 6:130-31). The prosecutor summarized petitioner's criminal history, including a sentence to jail time for evading arrest and a probation for a state jail felony that was subsequently revoked, and noted that petitioner went back after these convictions and used cocaine. He then said:

> I want you to look at the common thread that runs through every one of these cases. He always tries to evade. You notice that? That's what he was doing here. He was trying to get away. And he doesn't care who he hurts to do that. He doesn't care if it's you. He doesn't care if it's me. He certainly didn't care about these police officers. Because why? He's a sociopath.
>
> He's right, and they're wrong. They're wrong for even stopping him out there that night. They're wrong for the procedures they used. You see, everybody's wrong in this case except him. Everybody's wrong. We used the wrong tactics. We didn't do it right. But we never heard anybody say that – he never got up here and said, "I'm wrong." It's everybody else, because his sociopathic tendencies are, I'm right; society's wrong. And, you know, his resume on life speaks to that. Nineteen to 26 years. Here's his resume.

(R. 6:131-32).

Under Texas law, there are four areas of permissible jury argument: 1) summations of the evidence; 2) reasonable inferences or deductions from the evidence; 3) responses to opposing counsel's argument; and 4) pleas for law enforcement. *Wilson v. State*, 938 S.W.2d 57, 59 (Tex. Crim. App. 1996). The prosecutor essentially argued that it was reasonable to infer from petitioner's past criminal activity that he was a sociopath. This argument was not an impermissible one under state law that the trial court was required to correct.

Furthermore, in conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). A petitioner is entitled to federal habeas relief due to trial error only if "the error 'had substantial and injurious effect or influence in determining the . . . verdict.'" *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). Before the jury reached its decision at the punishment phase of petitioner's trial, it sent a note to the trial judge asking if petitioner had been diagnosed as a sociopath by the medical community. The State and defense agreed to answer this question "no." (R. 6:135-36). This corrected any error. Also, the jury was instructed at punishment that it could sentence petitioner to anywhere from five to ninety-nine years, or life imprisonment, for the crime of aggravated assault. (Tr.:235). It sentenced him to eighteen years. (Tr.:238; R. 6:136-37). Given this relatively low sentence, petitioner has failed to establish that any alleged trial error had a substantial and injurious effect on the verdict. The state court's denial of this claim is not contrary to federal law.

## IX.  BRADY CLAIM

In his thirteenth ground for relief, petitioner asserts that the prosecution withheld mitigating evidence by not offering into evidence the videotapes from the squad cars of the events that resulted in his arrest.

Under *Brady v. Maryland*, 373 U.S. 83, 87 (1963), suppression of evidence favorable to the accused and material to either guilt or punishment violates a defendant's due process rights under the federal constitution. *Brady* requires the prosecution to turn over to the defense both exculpatory and impeachment evidence, whether or not it was requested. *United States v. Bagley*, 473 U.S. 667, 682, 685 (1985). Such evidence is material if there is a reasonable probability that had the evidence

been disclosed, the result of the proceeding would have been different. A reasonable probability of a different result is shown when the suppression of evidence undermines confidence in the verdict. *Bagley*, 473 U.S. at 678; *Gibbs v. Johnson*, 154 F.3d 253, 256 (5th Cir. 1998).

Petitioner has failed to show that videotapes actually exist, and if so, that they are exculpatory and would have aided in his defense such that there is a reasonable probability he would not have been convicted of aggravated assault. Petitioner has not met the requirements of a *Brady* claim. The state court's denial of this ground for relief is not contrary to federal law.

## X. UNAUTHENTICATED EVIDENCE

In his fifteenth ground for relief, petitioner argues that his constitutional rights were violated because the trial court allowed the jury to hear unauthenticated audio tapes of the transmissions between the officers and the police dispatch on the day of petitioner's arrest, beginning with the unrelated manhunt and ending with the incident involving petitioner and his wife. (R. 5:137).

The audio tapes were admitted into evidence during petitioner's testimony at the guilt phase of the trial after petitioner's attorney stipulated to their authenticity and made no objection to their admission. (R. 5:137). Earlier in the trial while questioning petitioner on direct examination, counsel asked the prosecutor about the tapes and stated his intent to introduce them into evidence. (R. 5:114). During his closing argument, petitioner's trial attorney asked the jurors to listen to these same tapes during their deliberations because they would reflect that Officer Cauley was acting aggressively throughout that night and early morning. (R. 6:24-6).

Petitioner has presented no evidence that the audio tapes were not properly authenticated under state law. Even if they were not, federal courts "do not sit to review the admissibility of evidence under state law unless erroneous evidentiary rulings were so extreme as to result in a denial

of a constitutionally fair proceeding" in habeas actions. *Jackson v. Johnson*, 194 F.3d 641, 656 (5th Cir. 1999). The erroneous admission of prejudicial evidence "does not justify habeas relief unless the evidence played a 'crucial, critical, and highly significant' role in the [verdict]." *Id.* Petitioner has not shown that these tapes were prejudicial to his case. In fact, his attorney clearly believed that they were helpful to the defense. Finally, petitioner has not met his burden under *Brecht v. Abrahamson* to show that any alleged trial error had a substantial and injurious effect or influence on the guilty verdict. This claim is without merit, and the state court's denial of this claim is not contrary to federal law.

## XI. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Petitioner also claims that his trial counsel was ineffective for failing to (1) correct perjured testimony; (2) clarify petitioner's actual innocence at trial; (3) object to the prosecutor's closing argument that petitioner is a sociopath; (4) request mitigating evidence from the State; (5) clearly object to the unauthenticated audiotapes; and (6) request a jury charge or present testimony on the theory of an "involuntary act". (*See* grounds four, eight, ten, twelve, fourteen, sixteen, seventeen and eighteen).

To successfully state a claim of ineffective assistance of counsel under Supreme Court precedent, petitioner must demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). A failure to establish either prong of this test requires a finding that counsel's performance was constitutionally effective. *Id.* at 696. The Court may address the prongs in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

To determine whether counsel's performance is constitutionally deficient, courts "indulge

a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland*, 466 U.S. at 689. Further, "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691.

To establish prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. In the context of ineffective assistance of trial counsel, the prejudice component of the *Strickland* test "focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (citations and internal quotation marks omitted). Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent the alleged errors of counsel. *Strickland*, 466 U.S. at 695-96. Petitioners must "affirmatively prove prejudice." *Id.* at 693. They cannot satisfy the second prong of *Strickland* with mere speculation and conjecture. *Bradford v. Whitley*, 953 F.2d 1008, 1012 (5th Cir. 1992). Conclusory allegations are also insufficient to obtain habeas relief. *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990).

Petitioner's claims that his attorney was ineffective for failing to object to or correct perjured testimony, the prosecutor's closing argument, or the allegedly unauthenticated tapes do not entitle him to relief. As noted earlier, petitioner has presented no evidence that any State's witness offered perjured testimony or that the tapes were objectionable. The prosecutor's closing statement was permissible, and even if it wasn't, it was corrected. A failure to object does not constitute deficient representation unless a sound basis exists for objection. *See Emery v. Johnson*, 139 F.3d 191, 198

(5th Cir. 1997) (noting that a futile or "meritless objection cannot be grounds for a finding of deficient performance").

As for petitioner's assertion that his attorney was ineffective for failing to request mitigating evidence from the State, counsel filed a motion prior to trial requesting that he be provided all exculpatory and mitigating evidence even though it is the State's duty under *Brady* to provide this evidence. The motion was granted by the trial court. (Trial Transcript:42-45). Defense counsel was not ineffective on this basis.

Petitioner further asserts that his attorney was ineffective for "failing to properly clarify" petitioner's actual innocence at trial. He appears to complain about his attorney's cross-examination of State's witnesses. (Pet. Ex. A:6). Petitioner's attorney cross-examined almost all of the State's witnesses in great detail. (R. 4:128-30, 160-83, 245-46; R. 5:27-51). Although he did waive cross-examination of Cauley, he did so after petitioner's wife's attorney had extensively cross-examined him on all aspects of the case. (R. 4:69-122). On habeas review, the federal courts do not second-guess an attorney's decision through the distorting lens of hindsight, but rather, they presume that "counsel's conduct falls within the wide range of reasonable professional assistance . . . [and], under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland v. Washington*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). Officer Cauley's testimony was more than adequately challenged through cross-examination by other counsel, and petitioner has not shown that his attorney failed to exercise sound strategy in waiving his opportunity for cross-examination. Furthermore, petitioner's attorney made an extensive closing argument that petitioner was not guilty of the charges against him. (R. 6:24-47). Petitioner has not shown that his attorney was ineffective for failing to properly argue his innocence at trial.

Finally, petitioner asserts that his attorney was ineffective for failing to request a jury charge or to present testimony on the theory of an "involuntary act." Petitioner contends that because he was unconscious when his foot hit the accelerator, he was not was guilty of aggravated assault, and that his attorney should have presented evidence and requested that the jury be instructed on this issue. (Pet. Ex. A:9-10, 28-30). Counsel argued in his closing statement that petitioner had no intent to harm the police officers or use his car as a deadly weapon, and that the incident occurred because the officers were overly aggressive and failed to ensure that the car was turned off before struggling with petitioner and his wife. (R. 6:34-47). The jury was charged that petitioner was guilty of aggravated assault of a police officer if they found beyond a reasonable doubt that he intentionally, knowingly, or recklessly caused bodily injury to the police officer by striking him with a motor vehicle, knowing that he was a public servant. The jury was also instructed on the law of parties, and that petitioner was guilty of aggravated assault if, with the intent to promote or assist in the commission of the offense, he solicited, encouraged, aided, or attempted to aid his wife in the commission of aggravated assault. (Tr.:230).

The Court of Criminal Appeals has recognized that under Texas state law, "a jury may be charged that a defendant should be acquitted if there is a reasonable doubt as to whether he voluntarily engaged in the *conduct* of which he is accused" where the issue is raised by the evidence. *George v. State*, 681 S.W.2d 43, 45 (Tex. Crim. App. 1984), *quoting Dockery v. State*, 542 S.W.2d 644, 649-50 (Tex. Crim. App. 1976). The Court also held in *George* that where a defendant is charged with aggravated assault, which can be committed intentionally, knowingly, or recklessly, a jury need not be charged on whether the accused voluntarily engaged in the conduct for which he is charged where he voluntarily engaged in conduct that led to the assault, even where the defense

presents evidence that the bodily movement that caused the assault may have been unintentional. The Court explained that this is because a person can act recklessly with regard to the result of his conduct when he is aware of, but consciously disregards, a substantial and unjustifiable risk that the result will occur.  *George*, 681 S.W.2d at 46-47.

In petitioner's case, the jury was charged that he was guilty of aggravated assault if he acted recklessly or was reckless regarding the circumstances surrounding his conduct or the result of his conduct, with the result being that there was bodily injury to a public servant. (Tr.:228-29).  Under *George*, petitioner was not entitled to a jury instruction on an involuntary act based on his testimony that he did not remember accelerating the car because he also testified that his actions up until that time were voluntary.  Because he was not entitled to this jury instruction under state law, his attorney was not ineffective for failing to present evidence on the issue or request a jury instruction. Moreover, as noted earlier, petitioner's attorney did argue that petitioner was not guilty of aggravated assault because he had no intent to harm the officers.  Counsel used the defenses available to him, and petitioner has failed to establish deficient conduct.  The state court's denial of petitioner's ineffective assistance of counsel claims was not contrary to federal law, and these claims are without merit.

## XII.  EVIDENTIARY HEARING

Upon review of the pleadings filed herein, an evidentiary hearing appears unnecessary.

## XIII.  RECOMMENDATION

The Court should find petitioner's first ground for relief without merit and petitioner's second ground for relief barred by the statute of limitations and **DENY** the petition with prejudice.

**SO RECOMMENDED on this 31st day of July, 2010.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE


## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE